STENGER BENEVOLENT ASSOCIATION v. CAROLINE
STENGER.

FILED APRIL 8, 1898.   No. 7966.

1. **Married Women: CONTRACTS.** The disability of a married woman to enter into contracts still exists in this state, except to the extent it has been removed by legislative enactments.

2. ——: ——: **SEPARATE ESTATE.** She may contract with parties generally or with her husband, but it must be in reference to her separate property, trade, or business, or upon the faith and credit thereof and with the intent to charge her separate estate.

3. ——: ——: ——.  Whether the contract is of the nature just indicated is a question of fact.

4. ——: ——: ——.  In an action predicated upon promissory notes executed and delivered by a woman to her husband during the existence of the marital tie, if the coverture is pleaded in de-

fense and admitted or proved, it devolves on the plaintiff to show that the contracts were with reference to the separate property of the wife, upon the credit of and with intent to bind the same.

5. **Husband and Wife**: CONTRACTS: UNDUE INFLUENCE. A relation of trust and confidence arises and continues with the existence of the marital tie between parties, and where the contract of the wife to or with the husband is sought to be enforced and the coverture is interposed as a defense, coupled with a plea of the exercise by the husband of undue influence on the wife in obtaining the execution of such contract, the burden is on the plaintiff to establish that no unfair advantage was taken or undue influence exercised by the husband.

6. **Trial to Court**: ERRONEOUS ADMISSION OF EVIDENCE. Where the trial was to the court, the admission of incompetent testimony furnishes on review no sufficient ground for reversal, if the finding and judgment must for other reasons be affirmed.

ERROR from the district court of Platte county. Tried below before MARSHALL, J. *Affirmed.*

The opinion contains a statement of the case.

*Albert & Reeder*, for plaintiff in error.

References: *Buckingham v. Roar*, 45 Neb. 244; *May v. May*, 9 Neb. 16; *Brown v. Brown*, 22 Neb. 703; *Greene v. Greene*, 42 Neb. 640; *Skinner v. Skinner*, 38 Neb. 756; *Schultz v. Culbertson*, 1 N. W. Rep. [Wis.] 21; *Brower v. Callender*, 105 Ill., 88; *Bodine v. Morgan*, 37 N. J. Eq. 426.

*Whitmoyer & Gondring* and *A. M. Post, contra:*

In controversies between husband and wife, a less amount or degree of proof has always been required to impeach the transaction involved than in cases where the parties are enabled to contract upon terms of equality. Generally speaking, any undue advantage gained by the husband over the wife, by means of the marital relation, is, in a legal sense, a fraud upon her. (*Darlington's Appeal*, 86 Pa. St. 512; *Whitbeck v. Whitbeck*, 25 Mich. 439; *Jenne v. Marble*, 37 Mich. 319; *Farmer v. Farmer*, 39 N. J. Eq. 211; *Switzer v. Switzer*, 26 Gratt. [Va.] 574; *Dolliver v. Dolliver*, 94 Cal. 642; *Bennett v. Bennett*, 37 W. Va. 396.)

It is charged in the answer that defendant was, at the date of the notes and contract described in the petition, the wife of plaintiff's assignor, Martin Stenger, and that said notes were not executed with reference to, or upon the faith and credit of, her separate estate, or with intent to charge the same, while the reply in terms admits the defendant's coverture as pleaded. The burden was accordingly upon the plaintiff to bring the case, both by pleading and proof, within the exception of the statute. (*Grand Island Banking Co. v. Wright*, 53 Neb. 574; *Tracy v. Keith*, 11 Allen. [Mass.] 214; *Nash v. Mitchell*, 71 N. Y. 199; *Broome v. Taylor*, 76 N. Y. 564; *Saratoga County Bank v. Pruyn*, 90 N. Y. 250; *Rodemeyer v. Rodman*, 5 Ia. 426; *McGlaughlin v. O'Rourk*, 12 Ia. 459; *Cupp v. Campbell*, 103 Ind. 213; *Wood v. Losey*, 50 Mich. 475.)

Courts will lend their aid to enforce such agreements only, between husband and wife, as are affirmatively shown to rest upon equitable grounds, such, for instance, as a sufficient money consideration. (*Smith v. Dean*, 15 Neb. 432; *Johnson v. Vandervort*, 16 Neb. 141; *Furrow v. Athey*, 21 Neb. 671; *Ward v. Parlin*, 30 Neb. 376; *Hill v. Fouse*, 32 Neb. 637; *Wanzer v. Lucas*, 44 Neb. 759; *Miller v. Miller*, 16 O. St. 527; *Dean v. Metropolitan E. R. Co.*, 119 N. Y. 540.)

HARRISON, C. J.

In its petition filed in this action, commenced in the district court of Platte county, the plaintiff pleaded its corporate character and existence; and further, that the defendant had executed to Martin Stenger certain specifically described promissory notes which had been by him indorsed and transferred to the plaintiff; that there had been a failure to pay certain sums of interest at their maturity as it was provided should be done in an agreement which had been executed by the defendant in regard to payment of interest on the amount of the indebtedness evidenced by the notes, it being stated that by mistake or omission the intended contract relative to

interest had not been expressed in the notes, and the agreement to which we have alluded was subsequently executed and delivered by the defendant to Martin Stenger, and by him transferred to the plaintiff. Judgment was asked for alleged past due interest in the sum of $3,200 and interest thereon. The answer was as follows:

"The defendant, in answer to the petition of the plaintiff, denies that said plaintiff was, or now is, incorporated or is a corporation, and denies that plaintiff is entitled to receive the money upon said notes described in plaintiff's petition, or any part thereof, and denies that at the time said notes were executed it was the intention of the defendant that the interest mentioned in said notes should be paid annually, and denies that the plaintiff is the owner and entitled to receive the money upon the contract, a copy of which is marked 'Exhibit A' in plaintiff's petition, or any part thereof.

"The defendant, further answering plaintiff's petition, alleged that, before and at the time said promissory notes and contract were executed, said defendant was, and now is, the wife of said Martin Stenger, to whom said notes were made and delivered; that said notes and the contract for the payment of interest annually did not concern her separate property, trade, or business; that at the time of the execution and delivery of said notes and contract the defendant was not indebted to said Martin Stenger in any sum whatever; that no consideration whatever was given for said notes and contract for payment of interest annually; that said notes and contract for payment of interest annually were given solely and only because said Martin Stenger demanded, required, and insisted that she should make and give said notes and contract to him, said Martin Stenger, and threatened her that if she did not make and give up said notes and said contract to him he would break up the household and family ties; that he would commence proceedings for a divorce from her, and do all he could against her, on account of which she was much worried and suffered great fear and distress,

and said notes and said contract were made and delivered to said Martin Stenger to avoid constant worry, fear, and distress that he was inflicting upon her, and not with a view or intention of charging her separate property, trade, or business, or with reference thereto, nor upon the faith and credit of her separate property, trade, or business; that said notes and said contract for the payment of interest annually were transferred and delivered by said Martin Stenger to said plaintiff as a gift and without valuable consideration therefor."

To this there was the following reply:

"Comes now the plaintiff herein, and for reply to the answer of the defendant herein denies each and every allegation thereof not hereinafter specifically admitted.

"The plaintiff admits that at the time of the execution and delivery of the notes and the contract mentioned in the petition the defendant was, and still is, the wife of the said Martin Stenger, but avers that the said notes and contract were made with reference to and upon the faith and credit of the separate property of the defendant for a good and valuable consideration. The plaintiff further avers that it purchased said notes and contract of said Martin Stenger in the usual course of business before maturity, for a valuable consideration, and without notice of any infirmity therein or of any defense thereto."

A jury was waived, and a trial of the issues to the court resulted in a finding and judgment for the defendant. The plaintiff association asks in this court a review of the proceedings in the trial court.

It was disclosed by the evidence that Martin and Caroline Stenger, husband and wife, came to America from France during the year 1872 and that they brought with them several thousand dollars—some in money and some in the form of United States, or as they are generally denominated, "government," bonds. A portion of this amount belonged to the husband and a part to the wife. After they had been in this country about three

years some thousands of dollars more were received for the wife from her parents' estate. The money they had, and also that received, was invested in this country. The title to all real estate purchased or acquired was vested in the husband. At the expiration of about six years, or in 1878, the husband went back to the old country, where he stayed some nine years, or until 1887, when he returned to this country and demanded that the wife give him the property which she then had. During the six years from 1872, the time the couple came to America, to 1878, the husband invested and managed all the property—the money of his wife as well as his own; but when he started for the old country, in 1878, he gave to her what he stated to her was her separate property, which was all personal or chattel, none real, and retained what he considered and what seems to have been conceded as his share. He told his wife at the time, in substance, that he had managed her property long enough and in the future she should attend to it. The theory of the counsel for plaintiff seems to have been that all, or practically all, the property was left in charge of the wife, and that when the husband returned in 1887 he but demanded his own, or a division of the original amount and the accumulations, which, it was asserted amounted to a large sum. The evidence does not support this theory, but, on the contrary, sustains the view that a division was made by the husband in 1878 prior to starting to the old country. The wife refused in 1887 to accede to the demand of the husband relative to delivery to him of the property then in her possession, or any portion thereof, but finally executed and delivered to him thirty-six promissory notes, each for the sum of $500, and one in amount $779. Twenty of the notes were by the husband transferred to the plaintiff. The notes were a gift to the plaintiff. It is doubtless established in this state that a wife may contract with her husband in regard to her separate estate or upon the faith and credit thereof, and that such contract may be enforced in the "civil action"

provided by our Code of Civil Procedure (see Code of
Civil Procedure, sec. 2) and probably as at law (see *May
v. May*, 9 Neb. 16), but the confidential relation recognized
as arising with the marital tie and its continued exist-
ence with that of the bond of marriage are still of force
and accorded recognition. That relations of trust and
confidence do arise and exist between the husband and
wife with and during the continuance of marriage, and
that the husband will be, or is, with possibly a few nota-
ble exceptions, the dominant personage therein, are mat-
ters of common knowledge, and must be admitted; and it
is of the inherent qualities of such relations that no legis-
lature by its enactments, and no rule or law however
established, could as a matter of fact change them, nor
do we think it has been attempted. It will not be pre-
sumed that the legislature had the intent to combat or
set aside such stubborn and well-known principles of
human life and conduct. The disability of a married
woman to contract with reference to her separate estate
with parties generally or with her husband has been re-
moved, but the contract must be within established
governing principles and rules of conduct and fairness.
A forcible illustration that the confidential phase of the
marital sphere is acknowledged as still existent is af-
forded in the enforcement of the rule which excludes
testimony of either husband or wife of communications
between them during the existence of the tie. (See Code
of Civil Procedure, secs. 328, 331, 332; *Lihs v. Lihs*, 44
Neb. 143; *Niland v. Kalish*, 37 Neb. 47; *Greene v. Greene*,
42 Neb. 634.) The coverture of the defendant was pleaded
in the answer and admitted by the reply. In this con-
dition of the issues it devolved on the plaintiff to estab-
lish that the notes were executed with reference to, or
upon the faith and credit of, the separate estate of the
defendant or with intent to charge the same. This it did
not do; hence failed to make out a case. (*Grand Island
Banking Co. v. Wright*, 53 Neb. 574.)

It may be further said that with the relation of trust

32

and confidence existent between husband and wife, and the former the dominant factor therein, it was also necessary that it be shown by the plaintiff that in obtaining the contracts, the notes, there was due and sufficient consideration therefor and no unfair or inequitable exercise of power or influence by the husband. There was no such proof; on the contrary, there was sufficient evidence to sustain a finding of the exercise of influence by the husband in an unfair and undue manner. (*Greene v. Greene*, 42 Neb. 634; *Darlington's Appeal*, 86 Pa. St. 512; *Garver v. Miller*, 16 O. St. 527; *Dean v. Metropolitan Elevated R. Co.*, 119 N. Y. 540.)

It is urged for the plaintiff that the trial court erred in admitting the testimony of the defendant of communications between herself and husband. Conceding this to be true without discussing or deciding it, it does not furnish a reason for the reversal of the judgment, as without any of such testimony the finding and judgment must be approved. There are no errors presented which call for a reversal of the judgment and it will be

AFFIRMED.

SULLIVAN, J., took no part in the decision.