T. G. NORTHWALL COMPANY, APPELLEE, v. MARY K. OSGOOD, APPELLANT.

FILED FEBRUARY 20, 1908. No. 15,050.

1. **Husband and Wife: MARRIED WOMAN'S CONTRACTS.** The syllabus in *Farmers' Bank v. Boyd*, 67 Neb. 497, reaffirmed, and *held* to be the settled doctrine of this court.

2. ————: ————: The construction placed by this court upon the married woman's act, in *Grand Island Banking Co. v. Wright*, 53 Neb. 574, reaffirmed and *held* to be the settled doctrine of this court.

3. ————: NOTES: INNOCENT PURCHASER. A purchaser for value, before maturity, of a promissory note, signed by a married woman, cannot invoke the rule of innocent purchaser, as against the defense of coverture, by showing simply that he had no notice or knowledge of such coverture at the time he purchased such note.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Reversed.*

*D. F. Osgood,* for appellant.

*E. R. Hitchcock,* contra.

FAWCETT, C.

Plaintiff, T. G. Northwall Company, sued upon a combination chattel mortgage note, executed May 22, 1902,

and payable on or before April 1, 1903, to W. P. Atkins, or bearer, at his office in Sterling, Nebraska. The petition alleges that on the 19th day of January, 1903, Atkins indorsed said note, and for a valuable consideration, in the usual course of business, delivered the same to plaintiff, and that plaintiff became the owner of said note before maturity, without notice, and is an innocent owner of said note. To this petition, defendant, Mary K. Osgood, filed her answer, in which she alleges, among other things: "(2) This defendant alleges that she is a married woman, living with her husband, Daniel F. Osgood, and has been for the 19 years last past. (3) Defendant alleges that she did not sign the note sued on with the intention of binding her separate property or estate, nor was the consideration for said note used for the benefit of her separate property or estate. (4) Defendant alleges that the note sued on was signed at the request of her husband, above named, for the payment of one gasoline engine purchased by him of one W. P. Atkins." Then follow a number of other allegations to which it is not necessary to refer. No reply whatever was filed to this answer. Such being the state of the record, then, under the well-settled practice in this state, defendant was entitled to a judgment on the pleadings. No motion for such a judgment was interposed, however, but the parties proceeded to trial to the court, a jury having previously been waived. After hearing the evidence and arguments, the court found in favor of the plaintiff, and entered judgment against the defendant for the amount of the note and interest, aggregating the sum of $105. A motion for new trial was duly filed and overruled, and the case is here for review.

Even if we give plaintiff the benefit of a reply denying generally the allegations of defendant's answer, on the theory that defendant went to trial without raising the question of the absence of such reply, we must still reverse the judgment of the trial court. It is no longer an open question that "it is the settled doctrine of this court that the signing of a promissory note by a married woman

does not raise the presumption that she intended thereby to render her separate estate liable for its payment, nor that it was given with reference to her separate property, trade, or business, or upon the faith and credit thereof; and to an action upon such note coverture is a complete defense, unless the plaintiff shall establish by a preponderance of the evidence that the note was made with reference to, or upon the faith and credit of, the wife's separate estate or business, or with an intention on her part to charge her separate estate with its payment." *State Nat. Bank v. Smith*, 55 Neb. 54; *Grand Island Banking Co. v. Wright*, 53 Neb. 574; *Farmers Bank v. Boyd*, 67 Neb. 497.

The evidence contained in the bill of exceptions shows that the note in controversy was given by defendant in payment of a gasoline engine that had been sold by Atkins to defendant's husband. Defendant testified that she was a married woman, and living with her husband; that, when she signed the note, she did not intend to bind her separate property any further than as it was written in the note, which could mean nothing more than that the gasoline engine named in the mortgage clause of the note might be held as a pledge for the payment of the same. Plaintiff places great reliance upon two questions propounded to defendant by the court, and her answers thereto, viz.: "Q. By the Court. Who bought the gasoline engine? A. Mr. Osgood bought it. Q. Whose was it after it was bought; was it yours or his? A. I suppose it was mine, my name was attached to the note." There is nothing in the record to show where the engine was used, or for whose benefit. This is all of the evidence in any manner tending to show that defendant was dealing with reference to her separate estate. In our opinion it falls far short of being sufficient to establish that fact.

The uncontradicted evidence shows that before plaintiff purchased the note in suit, one of its representatives took it, with other notes, to the Farmers & Merchants Bank, and inquired of the cashier, the witness Boatsman, as to the responsibility of the makers of such notes. Mr. Boats-

man told him that the note in suit was good, but that Mr. Osgood (husband of defendant) claimed that Atkins, the original payee, owed him something, and that there was a dispute between them. The evidence also shows that plaintiff did not become the holder of the note by an ordinary purchase, but took it from Atkins in payment of an open account, and gave him credit on account for the amount of the note. There can be no doubt but that plaintiff's representative was trying to collect a claim which plaintiff held against Atkins, and that he knew when he took the note in suit that the maker was a married woman and the wife of D. F. Osgood, who was disputing with Atkins the payment of it. Under these circumstances, we do not think plaintiff can be held to be an innocent purchaser without notice.

Conceding that plaintiff purchased the note, for value, before maturity, and without notice of any defenses, we must still hold that such facts cannot overcome the defense of coverture interposed and established by defendant. In *De Gaalon v. Mutherne*, 5 La. Ann. 495, it is said: "The plaintiff insists that, though this note might not have been good in the hands of the original holder, yet in those of a subsequent holder for a valuable consideration the wife cannot resist the payment. This question came before the supreme court in the case of *Sprigg v. Boissier*, 5 Mart. (n. s.) 54, and was decided in favor of the wife. Conceding that the consideration of a negotiable note transferred before maturity cannot be gone into in an action by the indorsee, the court in that case correctly held that, when the objection to the contract arose from the incapacity of a party to enter into it, that which had not a binding effect when it was made cannot acquire it by indorsement. The note showed upon its face that the maker was a married woman. This was sufficient to put the plaintiff upon inquiry before he discounted it, and it was incumbent upon him to ascertain that the separate estate of the wife could be charged with it." If plaintiff's representative, at the time he took the note from Atkins, knew that plaintiff

was a married woman, plaintiff would be bound by such knowledge as effectually as if the note showed upon its face that the maker was a married woman, and would therefore come within the rule announced in the above case.

We think the defense of coverture is analogous to that of minority. It will not be claimed that a purchaser for value, before maturity, of a promissory note signed by a minor, could evade the defense of minority by showing want of knowledge of the maker's age; and it seems to us that the defense of coverture should be governed by the same rule. In each case, the infirmity in the note is the want of capacity of the maker. In the one case, the note is voidable under the settled law of this state, and, in the other, it is void as at common law, the statute not having enlarged a married woman's capacity to contract generally. *Grand Island Banking Co. v. Wright,* and *Farmers Bank v. Boyd, supra.* In *Englebert v. Troxell,* 40 Neb. 195, 212, we said: "And besides there is no such thing as an innocent purchaser of a minor's property." The reason for that rule rests in the absolute right of the minor to disaffirm all contracts, other than for necessaries, made while under the disability of infancy. In like manner there can be "no such thing as an innocent purchaser of a married woman's note," because of the absolute right of a married woman to disaffirm all contracts executed while under the disability of coverture, which are not made with reference to, and upon the faith and credit of, her separate business or property. We therefore hold that a purchaser for value, before maturity, of a promissory note, signed by a married woman, cannot invoke the rule of innocent purchaser, as against the defense of coverture, by showing simply that he had no notice or knowledge of such coverture at the time he purchased such note.

We recommend that the judgment of the district court be reversed and the cause remanded for further proceedings in harmony herewith.

Ames and Calkins, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings in harmony therewith.

REVERSED.